Armando GONZALEZ,
Plaintiff-Appellant,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY,
Defendant-Appellee.

No. 84–1149.

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1985.

Michael D. Cucullu, Houston, Tex., for plaintiff-appellant.

Dan C. Dargene, Charles C. High, Jr., El Paso, Tex., for defendant-appellee.

George P. Parker, Jr., San Antonio, Tex., for amicus Ass'n of American Railroads.

Appeal from the United States District Court for the Western District of Texas.

ON PETITION FOR REHEARING

(Opinion March 28, 1985, 5th Cir.1985, 755 F.2d 1179).

Before RUBIN, TATE, and HILL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

While the suggestion for rehearing en banc was pending following the publication

of our opinion,[1] Gonzalez pursued his administrative remedies to culmination by arbitration. The arbitrator resolved the sole factual issue on which we had intended to remand the case and ordered Gonzalez reinstated. Although the arbitrator's conclusions neither moot nor estop Gonzalez's claims in this court, they do raise the question whether we should defer to the arbitrator's findings, consistent with Congress's command that arbitration awards in employment disputes be final and binding. We now hold that, under the specific facts of this case, deference to the arbitrator's finding of fact is appropriate and it is no longer necessary to remand the case, or even to reach the issue of statutory interpretation discussed in our earlier opinion. We, therefore, withdraw our earlier opinion and affirm on different grounds the district court's dismissal of Gonzalez's case.

## I.

On August 26, 1983, an employee of Southern Pacific was told by his doctor that he had a hernia requiring expensive surgical repair. The employee filed an accident report with his employer the same day, describing an accident that supposedly occurred on August 15 and caused his hernia. On August 17, before going to the doctor, the employee had asked his friend and coworker, Armando Gonzalez, to feel a bump on his chest. When the employee filed his report on the 26th, he asked Gonzalez to file an additional report supporting his claim. Although Gonzalez was not at work when the accident supposedly occurred, he filed a report on August 27 that implied that Gonzalez had witnessed the accident.

The front of Gonzalez's report was dated August 15, 6:30 a.m. to 2:30 p.m. shift, although the date of August 27 appears under Gonzalez's signature on the back. In answer to the question on the report, "Where were you when accident occurred," Gonzalez replied, "Right next to his unit 2673 on unit." However, in response to the inquiry, "State how the accident occurred," Gonzalez described no events that occurred on August 15, but replied that the injured employee "was working by himself" and that on August 17, the employee was working "by himself again, that's when he ask [*sic*] me ... to see if I could feel something in his right side, under the right hand shirt pocket, and I could feel a small bump." Gonzales also described conversations that occurred after the 17th discussing his friend's hernia.

The accident report of the injured employee is similarly ambiguous, listing Gonzalez as a witness, but stating that the employee was working alone when the accident occurred. Gonzalez claims that he did not knowingly or intentionally file a false report. He meant to attest only events that occurred after the injury but misunderstood the responses called for by the form.

After a company investigation and hearing, the railroad concluded that Gonzalez's report was false and discharged him for dishonesty. Under the terms of the collective bargaining agreement between the railroad and his union, Gonzalez filed a grievance seeking reinstatement and back pay.

At the same time, Gonzalez brought an action in district court for a preliminary injunction to prevent the railroad from dismissing him or withholding his pay. Gonzalez based his claim on a right of action implied from 45 U.S.C. § 60. The full text of the statute is set forth in the footnote[2] but, in relevant part, it provides:

---

**1.** *Gonzalez v. Southern Pacific Transportation Co.,* 755 F.2d 1179 (5th Cir.1985).

**2.** 45 U.S.C. § 60 (1982) reads:

Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or at-

Any ... rule ... or device whatsoever, the ... effect of which shall be to. prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and ... whoever discharges or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or ... both...."

The district court dismissed Gonzalez's claim for lack of jurisdiction, holding that the term "person in interest," as used in the statute, does not include railroad employers and, therefore, that § 60 does .not create an implied cause of action when an employee has been disciplined for furnishing information to his employer. Gonzalez appealed to this court.

Our opinion held that, absent ambiguity, statutes are to be interpreted according to their plain meaning and without resort to the uncertainties of legislative history. We found that the plain meaning of the statutory phrase "person in interest" necessarily included the railroad but that the furnishing of information known to be false, with deliberate deceptive intent, would not fall within the protection of the Act.[3] We therefore remanded the case to the district court to resolve the single determinative factual issue: whether Gonzalez knowingly filed a false accident report with the intention of deceiving the railroad.

After publication of our opinion, Southern Pacific promptly filed a suggestion for rehearing en banc, joined by the Association of American Railroads as *amicus curiae*. Issuance of our mandate was stayed while the suggestion for rehearing remained under consideration.

During this time, Gonzalez's grievance proceedings progressed to arbitration under the terms of the Railway Labor Act.[4] The arbitrator found that Gonzalez had been "responsible for a major violation of [the] carrier's rules" and that the report was false. Because of Gonzalez's favorable employment record, and because he did not stand to make any personal gain by his ·violation, the arbitrator ordered Gonzalez reinstated, but without back pay. We requested supplemental briefs from both parties addressing the effect we should give the arbitrator's decision.

■ Both Gonzalez and Southern Pacific agreed that the arbitrator's decision does not moot this appeal. Gonzalez's request for nearly two years of back pay remains unsatisfied. As we wrote, facing a nearly identical situation in *Hendley v. Central of Georgia Railroad*,[5] "[t]he continued denial of back pay for the year that Hendley was unemployed is a present unlawful interference with Hendley's right of employment, and constitutes a continuing violation of § 60" that justifies an implied action in federal court for an injunction.[6] Even though, for reasons set forth below, we do not find it necessary to decide whether Gonzalez had a protected right under § 60, a live controversy remains between the parties.

Although the arbitrator's decision does not end the matter, Southern Pacific urges that any remand would offend congressionally declared policies of deference to, and finality of, arbitration proceedings in labor disputes subject to collective bargaining agreements. We now grant a panel re-

---

tempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense; *Provided,* That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

**3.** 755 F.2d at 1183–85.

**4.** 45 U.S.C. § 151 *et seq.* (1982).

**5.** 609 F.2d 1146 (5th Cir.1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981).

**6.** *Id.* at 1153 n. 5.

hearing to address this issue and to respond to the arguments raised in the supplemental briefs.

## II.

■ Southern Pacific has sought rehearing en banc, not by the panel. Nevertheless, a suggestion for rehearing en banc remains within the plenary control of the panel deciding the case unless voted en banc by a majority of active circuit judges. As the Internal Operating Procedures of the Fifth Circuit provide, "[a] suggestion for rehearing en banc will be treated as a petition for rehearing by the panel if no petition is filed. The panel may grant rehearing without action by the full Court." [7]

Our Internal Operating Procedures demarcate the circumstances appropriate for rehearing en banc and for panel rehearing. En banc consideration is "an extraordinary procedure which is intended to bring to the attention of the entire court a precedent-setting error of exceptional public importance or an opinion which directly conflicts with prior Supreme Court [or] Fifth Circuit precedent. Alleged errors ... in the facts of the case ... or error asserted in the misapplication of correct precedent to the facts of the case, are matters for *panel rehearing* but not for rehearing en banc." [8]

The issues raised by Southern Pacific's brief and the question of deference to arbitral findings of fact are properly within the ambit of a panel rehearing and do not warrant consideration en banc.

## III.

In *Hendley* we held that § 60 protects an employee from formal investigation, discharge, or loss of pay after reinstatement, for assisting in the investigation of an injury to a fellow employee and giving a deposition to be used in the fellow employee's case.[9] Specifically, we stated, "[i]f an employee can show that the object of a railroad's investigation is to discipline the employee for furnishing information in an FELA case, ... injunctive relief by a federal district court is 'appropriate if not compelled,'" and that "a district court's ability to enjoin a hearing or conduct which violates § 60 is essential to effectuate the purpose of the section." [10]

As we interpreted § 60 in *Hendley*, its purpose is to prohibit the "overwhelming coercive effect" that disciplinary actions by railroads have on an employee's willingness to testify in a FELA case, notwithstanding the availability of grievance procedures that might later remedy the specific disciplinary action taken against the employee:

> Employees who consider testifying in an FELA case will understandably hesitate if they know that they may be forced, as Hendley was, to undergo a formal investigation and possibly suspension for a lengthy period of time. The fact that the employee may ultimately prevail is of little assurance to one who faces possible unemployment for a year or more. Thus, the disciplinary procedure not only violates the mandate that an employer refrain from disciplining an employee for furnishing information, it also becomes a device the "effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest." [11]

■ Ordinarily a plaintiff must show a substantial threat of irreparable harm in

---

7. Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit, accompanying Local Rule 35; *see also* Federal Rule of Appellate Procedure 35(a) & 40(a); Fifth Circuit Court Policy 6.

8. Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit accompanying Local Rule 35 (emphasis in original).

9. 609 F.2d at 1153; *see also Stark v. Burlington Northern, Inc.,* 538 F.Supp. 1061, 1063 (D.Colo. 1982).

10. 609 F.2d at 1152 (quoting *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.,* 305 F.2d 605, 609 (5th Cir.1962)).

11. *Id.* at 1152–53 (quoting 45 U.S.C. § 60).

order to obtain injunctive relief.[12] The rationale of *Hendley*, however, is that a district court should grant injunctive relief if an employee shows that he has been discharged for furnishing information to an interested person. The harm to be prevented by this remedy is not the employee's loss of employment or pay, which may or may not be recovered by him through the grievance process, but coercion of FELA witnesses, which, if allowed to flourish, would undercut the Act. The district court erred, therefore, when it required Gonzalez to show any further injury beyond discharge.

■ The railroad contends, however, that it has not enforced a rule against or discharged an employee for furnishing information, but has instead acted to enforce a rule that prohibits the filing of required reports that are false. We agree that the Act was not designed to protect FELA witnesses if they deliberately give information known by them to be false. As we stated in *Hendley*, our interpretation of § 60 does not mean that "an employee may never be disciplined for his conduct in connection with an FELA case."[13] If Gonzalez lied in the accident report, § 60 presents no barrier to his discharge.

The railroad also argues that, whether the report is true or false, § 60 does not protect employees who furnish information to the railroad, but covers only employees who furnish information to fellow employees or to their legal representatives. The railroad supports this argument by a reading of legislative history and intention that would interpret the term "person in inter-

est" to exclude the railroad-employer. Because we find it appropriate, under the facts of this case, to defer to the arbitrator's finding that Gonzalez filed a false accident report, we no longer reach this argument addressed in our earlier opinion. Even if "person in interest" is taken to include the railroad, Gonzalez's conduct would not be protected.

## IV.

Southern Pacific takes the arbitrator's decision as evidence that we should accord "preemptive jurisdiction" to the compulsory arbitration procedures of the Railway Labor Act. They argue that Congress established "an expert body [of arbitrators] ... peculiarly familiar with the thorny problems and the whole range of grievances that constantly exist in the railroad world ... in daily contact with workers and employers, and know[ing] the industry's language, customs, and practices."[14]

We acknowledge the congressional imperative that labor disputes be left to arbitration, but, when employees assert claims under a federal statute, we cannot surrender jurisdiction so readily. We must examine more carefully the place carved out for federal courts by Congress and the Supreme Court.

In *Andrews v. Louisville & Nashville Railroad Company*,[15] the Supreme Court held that minor disputes and grievances arising under collective bargaining agreements with common carriers must be resolved exclusively through arbitration proceedings under the Railway Labor Act.[16]

---

**12.** *See Commonwealth Life Ins. Co. v. Neal,* 669 F.2d 300, 303 (5th Cir.1982); *Southern Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185, 186 (5th Cir.1982).

**13.** 609 F.2d at 1153.

**14.** *Gunther v. San Diego & Arizona Eastern Railway,* 382 U.S. 257, 261, 86 S.Ct. 368, 370–71, 15 L.Ed.2d 308, 311 (1965); *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

**15.** 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

**16.** *See also Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co.,* 373 U.S. 33, 40, 83 S.Ct. 1059, 1063, 10 L.Ed.2d 172, 177 (1963); *Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co.,* 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); *cf. United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Textile Workers Union v. Lincoln*

The "Act makes the federal administrative remedy exclusive.... A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding.... He is limited to the judicial review of the Board's proceedings that the Act itself provides." [17] The scope of this judicial review is "among the narrowest known to the law." [18] All findings are conclusive. The Board's order may be set aside only for failure to comply with the statute, failure to abide by its jurisdictional limits, or fraud or corruption.[19]

*Andrews* does not, however, require that federal courts surrender original jurisdiction over claims brought to vindicate rights guaranteed by federal statutes. The Supreme Court has held that prior arbitration proceedings do not bar claims brought in federal court under Title VII,[20] the Fair Labor Standards Act,[21] and 42 U.S.C. § 1983.[22] Even if the same claim and factual allegations were determined by binding arbitration, the plaintiff is entitled to *de novo* review in a federal court and doctrines of *res judicata* or collateral estoppel are inapplicable. In *McDonald v. City of West Branch,* the most recent of these three decisions, the Court held that arbitration does not preclude an action brought under § 1983 and summarized the common reasoning supporting this line of decisions.

First, the Court noted, 28 U.S.C. § 1738 does not require that federal courts give full faith and credit to arbitration decisions unless the decisions were appealed to and affirmed by a state or federal court.[23] Any

preclusive effect given to arbitration proceedings would be of judicial, not statutory or constitutional, origin.

Second, each of the federal statutes under consideration created substantial rights intended by Congress to be judicially enforced. Arbitration is not an equivalent substitute. The arbitrator's experience relates to "the law of the shop, not the law of the land" [24] and he may not have the requisite expertise for legal analysis and statutory construction. The arbitrator's authority is limited to the collective bargaining agreement, and he may not look outside the agreement to enforce statutory rights. When the terms of the agreement conflict with rights under a federal statute, the arbitrator has no choice but to enforce the agreement and ignore the statute. Were he independently to take cognizance of the statute, that would be adequate ground to deny enforcement of his decision. Arbitration proceedings are generally under control of the union; they are not controlled by the employee as judicial proceedings are controlled by the plaintiff. Should the union's objectives diverge from those of the individual employee, the union's decision not to press an individual grievance may deprive the employee of an opportunity to defend his rights. "Finally, arbitral factfinding is generally not equivalent to judicial factfinding ... 'the record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under

---

*Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

17.   406 U.S. at 325, 92 S.Ct. at 1565, 32 L.Ed.2d at 100; *see* 45 U.S.C. § 153 First (i) & (q) (1982).

18.   *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 92, 99 S.Ct. 399, 401, 58 L.Ed.2d 354, 358 (1978).

19.   *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354, 358 (1978) (per curiam); 45 U.S.C. § 153 First (q) (1982).

20.   *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

21.   *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981).

22.   *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).

23.   *Id.* at ——, 104 S.Ct. at 1802, 80 L.Ed.2d at 307.

24.   *Alexander v. Gardner-Denver Co.,* 415 U.S. at 57, 94 S.Ct. at 1024, 39 L.Ed.2d at 163.

oath are often severely limited or unavailable.' "[25]

The Supreme Court did not require, however, that in denying arbitration proceedings preclusive effect the courts must ignore the arbitrator's verdict. In each of the three decisions, the court was careful to note that "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate."[26] The Court then outlined relevant considerations in a footnote, repeated in all three cases:

> We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the ... provisions in the collective-bargaining agreement ... the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue ... and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's [statutory] rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record.[27]

■ In short, the general rule that railway labor disputes are subject only to arbitration and limited judicial review must yield when employees assert rights guaranteed by a federal statute. Even in these cases, however, the court may consider and defer to the arbitrator's conclusions if, in the court's discretion, the facts warrant such deference.

Southern Pacific argues that this line of reasoning should be limited to causes of action granted directly by Congress to individuals: If a private remedy is merely implicit in a statute, judicial intervention is not warranted. Unlike Title VII, the Fair Labor Standards Act, or § 1983, Congress did not expressly authorize individuals to assert rights under 45 U.S.C. § 60 in federal court. Those circuits that have addressed the issue of retaliatory discharge for filing FELA claims have held that no cause of action is to be found in the statute and that employees are limited in their recourse to arbitration.[28] Although those cases may be equally repugnant to the policy behind § 60, they are inapposite, because they do not involve conduct expressly covered in the statute. The statute declares it illegal to discipline an employee for furnishing information but does not mention anywhere the plight of employees discharged for filing FELA claims.

Although Gonzalez does not bring a direct claim under the statute, the necessity for judicial intervention may be equally great. The question to be addressed is whether Congress intended to create a judicially enforceable right.[29]

■ As we held in *Hendley*, when an employee is disciplined for furnishing information, the opportunity to pursue an injunction in federal court independent of grievance procedures is essential to effec-

---

**25.** *McDonald,* 466 U.S. at ——, 104 S.Ct. at 1804, 80 L.Ed.2d at 309 (quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. at 57–58, 94 S.Ct. at 1024, 39 L.Ed.2d at 163).

**26.** *Alexander v. Gardner-Denver Co.,* 415 U.S. at 60, 94 S.Ct. at 1025, 39 L.Ed.2d at 165.

**27.** *Id.* at 60 n. 21, 94 S.Ct. at 1025 n. 21, 39 L.Ed.2d at 165 n. 21; *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 743–44 n. 22, 101 S.Ct. 1437, 1446 n. 22, 67 L.Ed.2d 641, 655–56 n. 22; *McDonald* at —— n. 13, 104 S.Ct. at 1804 n. 13, 80 L.Ed.2d at 310 n. 13.

**28.** *Minehart v. Louisville & Nashville Railroad,* 731 F.2d 342 (6th Cir.1984); *Landfried v. Terminal Railroad Association of St. Louis,* 721 F.2d 254 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984); *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

**29.** *See, e.g., Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435, 446 (1981); *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 15, 101 S.Ct. 1531, 1538, 67 L.Ed.2d 694, 706 (1981); *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26, 36 (1975); *Stewart v. Bernstein,* 769 F.2d 1088, at 1091 (5th Cir.1985).

tuate the goal of the statute. The grievance procedures may themselves deter employees from furnishing information. Therefore, although no direct cause of action is granted by federal statute, we apply the Supreme Court's reasoning and do not raise the insurmountable barriers of *res judicata* or collateral estoppel.

The question remains whether, under the Supreme Court's guidance and the specific facts of this case, we should defer to the arbitrator's finding that Gonzalez filed a false report and so hold that he is ipso facto unprotected by the Act. The issue is a straightforward matter of fact untinged by legal interpretation that might exceed the arbitrator's competence. Whether the misleading report was a deliberate deception or an honest mistake was the central question before the arbitrator and so received his "full consideration." Resolution of the question depends particularly on a knowledge of work place custom: Are accident reports often filed late? Do fellow employees commonly witness events that took place in the days following the accident? In filling out the forms, do employees respond carefully to the printed questions or is it customary to narrate events and ignore the form? These matters are all well within the "law of the shop" that is the arbitrator's special expertise. Neither party contends that the arbitration was procedurally unfair or that the facts in the record do not support the decision. For these reasons, we defer to the arbitrator's determination and find no need to remand the case.

Our holding here does not limit or contradict our holding in *Hendley*. The arbitrator in *Hendley* faced a conflict between the agreement and the law and, as he should, followed the agreement. He decided that certain conduct by Hendley in furnishing information to a FELA plaintiff and his attorney constituted disloyalty to the railroad and justified the employee's discharge. We did not there dispute the arbitrator's factual findings but accepted them, holding that Hendley's only disloyalty as found by the arbitrator consisted of "conduct that falls within the protection of § 60." [30] We recognized that, when conduct that is protected by § 60 is the subject of disciplinary proceedings, either a disciplinary hearing or arbitration proceeding may itself become a device to intimidate the employee in violation of the statute and that "[t]he question of whether a particular disciplinary hearing violates § 60 ... is, therefore, a matter of federal jurisdiction." [31] Because the arbitrator's award was premised on his acceptance of conduct that violated the statute, we declared his decision null and void.[32]

Here Gonzalez's conduct, as determined by the arbitrator, falls outside the Act. We defer to his findings.

## V.

The district court dismissed the case for lack of jurisdiction. As we have explained on several occasions, "the assertion of a claim under a federal statute 'alone is sufficient to empower the district court to assume jurisdiction and determine whether, in fact, the Act does provide the claimed rights.' " [33] If, as a matter of fact or law, the plaintiff fails to establish a claim brought under a federal statute, the case is properly dismissed under Fed.R.Civ.P. 12(b)(6) or 56. It should not be dismissed for lack of jurisdiction. We, therefore, modify the district court's order to grant summary judgment for the defendant under Rule 56.

**30.** 699 F.2d at 1153.

**31.** *Id.* at 1151.

**32.** *Id.* at 1153.

**33.** *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 359, 79 S.Ct. 468, 473, 3 L.Ed.2d 368, 374 (1959). *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 289, 293–94 (5th Cir.1984); *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 12.07[2.–1] (2d ed. 1985).

ROBERT MADDEN HILL, Circuit Judge, specially concurring:

Because the earlier opinion in this case is withdrawn, I concur in the present opinion of the Court in this case. However, I remain committed to the view expressed in my dissent, 755 F.2d at 1186, to the earlier opinion that the term "person in interest" contained in § 60 does not include an employer railroad company (in this case Southern Pacific) but only covers fellow employees and representatives of employees. This is clear from the legislative history surrounding the passage of § 60 and in particular the inclusion of the language "person in interest" in the statute. When Gonzalez furnished information to Southern Pacific about an injury suffered by a fellow employee, in my opinion he was not entitled to the protective features of § 60. Thus, I would dispose of this case by holding that Gonzalez has failed to state a claim, rather than deferring to the arbitrator's finding on the sole factual issue that was remanded for trial in the court's earlier opinion.