**Bruce E. HORNSBY, Appellant,**

v.

**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY,**
**Appellee.**

No. 91–1227.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1991.

Decided May 12, 1992.

Rehearing and Rehearing En Banc
Denied June 24, 1992.

---

**3.** Indeed, at oral argument, Block's counsel did not know if Midwestern ever demanded that Walker return the money.

James N. Vail, Chicago, Ill., argued for appellant.

Spencer Fox Robinson, Pine Bluff, Ark., argued, for appellee.

Before ARNOLD,\* JOHN R. GIBSON, and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Bruce Hornsby appeals the district court's[1] judgment denying his claim against St. Louis Southwestern Railway Company for back pay and reinstatement under 45 U.S.C. § 60 (1988). The district court held that Hornsby's action was for declaratory and equitable relief and should be tried to the court. The court determined that Hornsby was discharged for intentionally giving false testimony about a co-employee's FELA claim, and that his behavior was not protected under 45 U.S.C. § 60. On appeal, Hornsby argues that his claim was for legal relief and hence the district court erred in striking his jury demand. He argues that the court's findings of fact, particularly as to credibility, were clearly erroneous. Finally, he argues that the district court erred in denying his discovery requests for production of the railroad's litigation file from the co-employee's FELA litigation. We affirm.

On April 21, 1982, Hornsby was working on a crew in the railroad yards in Pine Bluff, Arkansas, when Clarence Broome, a brakeman, injured his back as he threw or "lined" a switch. When Ashley Spears, an assistant trainmaster, met Broome in an office nearby, Spears was told that the other crew members wanted to speak to him. Spears contacted the crew by radio and a person whom Spears identified as Hornsby asked him if the crew members needed to fill out a Form 2611, an accident report form, before their train pulled out. Hornsby told Spears that none of the crew had seen the accident. Hornsby and other crew members filled out a Form 2611 the next day concerning Broome's accident. They stated that they had not witnessed the accident. In response to the question, "Did you see the accident?", Hornsby wrote "no," and stated: "Brakeman Broome said he injured his back while trying to line crossover switch at roundhouse." Hornsby claimed that he submitted another form, Form 2957, on April 23, 1982, in which he stated that he saw the accident, but this form was not discovered or produced, and there was no evidence on this issue other than Hornsby's claim of having submitted this form.

On January 27, 1986, Hornsby gave a statement about the accident to Rick Rosen, Broome's lawyer, in his FELA action against the railroad. The statement was provided to the railroad's defense attorney in August 1986, who in turn took another statement from Hornsby. In both statements, Hornsby claimed that he was an eyewitness to the Broome accident. On April 22, 1987, Hornsby appeared at Broome's trial and testified that he saw the accident occur. The jury awarded Broome $1,200,000.

At Broome's trial, Spears first learned that Hornsby claimed to have witnessed the Broome accident. Spears informed the

---

\* The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

1. The Honorable Elsijane T. Roy, Senior District Judge for the Eastern and Western Districts of Arkansas.

railroad's division superintendent of the contradiction between Hornsby's statements at the time of the accident and his testimony at Broome's trial. The railroad conducted an investigation, and after a report from the hearing officer, the railroad superintendent concluded that Hornsby should be terminated because he had not explained the discrepancy between his 1982 and 1986–87 accounts of the Broome accident. The railroad fired Hornsby for dishonesty. His union, the United Transportation Union, appealed the dismissal under the provisions of the Railway Labor Act. A Special Board of Adjustments found that there was substantial evidence to support the conclusion that Hornsby had been dishonest and had thus violated company rules and that the railroad was justified in firing him. Hornsby did not appeal from the board decision.

Hornsby thereafter brought this action claiming that the railroad violated 45 U.S.C. § 60[2] in firing him. He sought reinstatement, payment of lost wages and benefits with interest, a declaration that the railroad's actions violated section 60, and an injunction prohibiting the railroad from taking disciplinary action in connection with the Broome suit.

■ The district court characterized Hornsby's action as one for declaratory and equitable relief and denied Hornsby's request for a jury trial. Order of June 19, 1990, slip op. at 1. After a bench trial, the district court entered judgment for the railroad. The district court observed that section 60 gives jurisdiction to order reinstatement and award back pay as a result of an employer's wrongful retaliation against FELA witnesses. Order of Jan. 3, 1991,

slip op. at 6. However, section 60 does not protect a witness who deliberately gives false information. *Id.* (citing *Gonzalez v. Southern Pac. Transp. Co.*, 773 F.2d 637, 642 (5th Cir.1985)). The court found that the discrepancies in Hornsby's statements about the Broome accident were not the result of innocent mistakes, but of intentional deception. *Id.* at 6–7. Insofar as there was a conflict between Hornsby's testimony and Spears', the court found Spears to be the more credible witness. *Id.* at 7. Consequently, the court held that the railroad's discharge of Hornsby did not violate section 60. *Id.*

First, Hornsby argues that the district court erred in striking his request for a jury trial. The district court reasoned that the relief plaintiff sought pursuant to 45 U.S.C. § 60 was entirely equitable in nature and, thus, plaintiff had no entitlement to trial by jury on the issues presented. Order of June 19, 1990, slip op. at 1. Hornsby argues that his complaint sought a "money judgment" and therefore his claim should be considered "legal," and triable by a jury.

■ The only basis for relief Hornsby asserts is 45 U.S.C. § 60, a criminal statute designed to protect FELA witnesses from retaliation by their employers. Other circuit courts in construing this statute have recognized only a very narrow kind of civil relief. Courts have given equitable relief, including back pay, to prevent violation of section 60. *See Hendley v. Central of Georgia R.R.*, 609 F.2d 1146, 1152–53 & n. 5 (5th Cir.1980), *cert. denied*, 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981). "[A] district court's ability to enjoin a hearing or conduct which violates § 60 is essen-

---

**2.** The relevant part of 45 U.S.C. § 60 provides:

Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disci-

plines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: *Provided*, That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

tial to effectuate the purpose of the section." *Id.* at 1152. However, section 60 does not create a private cause of action for compensatory damages. *Lewy v. Southern Pac. Transp. Co.*, 799 F.2d 1281, 1293 (9th Cir.1986). After recognizing the *Hendley* and *Gonzalez* holdings that section 60 provides statutory authority for injunctive relief, *Lewy* states: "[A]t most, [section 60] appears to authorize courts to exercise equitable jurisdiction over retaliation claims, and thus to award back pay, but not additional money damages." 799 F.2d at 1293 (citations omitted). We do not believe that those courts that have granted relief under section 60 considered themselves to be recognizing new legal rights, but merely to be preserving the efficacy of a criminal prohibition. *See Gonzalez*, 773 F.2d at 644–45. Such prohibition in the civil context is effectuated by injunctive or equitable relief and this has been the extent of the remedy that has been recognized.[3] Therefore, the district court correctly struck Hornsby's request for a jury trial.

Second, Hornsby attacks the district court's findings on credibility. The district court, relying on *Gonzalez*, held that section 60 was not designed to protect FELA witnesses who deliberately give false information, and that if a witness lied in an accident report, section 60 presented no barrier to firing him. Order of Jan. 3, 1991, slip op. at 7. The district court concluded that Hornsby had been dishonest rather than mistaken, and that Spears was more credible than Hornsby. Accordingly, the court decided section 60 did not prevent Hornsby's discharge.

■ Hornsby argues that these findings of the district court are clearly erroneous. In this respect, our analysis is governed by *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We may only reverse if we are left with a definite and firm conviction that a mistake has been committed. *Id.* If the district court's account of the evidence is plausible in light of the record in its entirety, we may not reverse. Where findings are based on determinations of credibility, this court must pay even greater deference to the district court's findings. *Id.* at 575, 105 S.Ct. at 1512. Hornsby argues that there is overwhelming evidence that he was in a position where he would have seen the accident, but the essence of his argument is simply to ask this Court to override the district court's view on his and Spears' credibility. This we will not do. The district court's conclusion that Hornsby lied is certainly a permissible view of the evidence, and that being so, we may not reverse. *See id.* at 574, 105 S.Ct. at 1511.

■ Finally, Hornsby contends that the district court erred in refusing to compel the railroad to produce certain documents from the file of John Gunn, the railroad's

---

**3.** Judge Arnold in his uniquely persuasive manner argues that any claim seeking monetary relief must be a suit at common law for money damages. However, the distinction between legal and equitable issues persists even after *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and does not ride on as simple a question as whether money will change hands if the plaintiff wins. The Supreme Court recently made this point at length:

Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for "the recovery of specific property *or monies*, ejectment from land, or injunction either directing or restraining the defendant officer's actions." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 [69 S.Ct. 1457, 1460, 93 L.Ed. 1628] (1949) (emphasis added). The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages." Thus, we have recognized that relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not "damages". . . .
*Bowen v. Massachusetts*, 487 U.S. 879, 893–94, 108 S.Ct. 2722, 2732, 101 L.Ed.2d 749 (1988). *Bowen* was interpreted by the District of Columbia Circuit as holding that backpay is equitable relief. *See Hubbard v. E.P.A.*, 949 F.2d 453, 462–66 (D.C.Cir.1991). The decision was vacated for rehearing en banc, 1991 WL 245186, 1992 U.S.App. LEXIS 3840 (March 2, 1992). *But see Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 440 n. 9 (1st Cir.1989).

attorney in the Clarence Broome case. Hornsby sought to discover "the entire litigation and claims files maintained by either the St. Louis Southwestern Railway Company and/or their [sic] legal counsel, John Gunn." The railroad produced the requested documents except those which it claimed were shielded by attorney-client or work product privilege. The railroad filed a list of the documents it claimed were privileged, and offered to make Mr. Gunn available for deposition. The district court reviewed the listed documents *in camera* and ordered one of them to be produced, even though the document was apparently subject to the attorney-client privilege. Order of April 26, 1990, slip op. at 1. The court did not order the railroad to produce its other privileged documents. *See id.* at 1–2.

Hornsby now contends that the district court should have required production of all the documents. The list of withheld documents indicates that they are either an attorney's notes made in preparing a case, or in a few instances, attorney-client communications. Hornsby points to no act by the railroad that would amount to a waiver of any privilege; therefore, his reliance on *Greater Newburyport Clamshell Alliance v. Public Service Co.,* 838 F.2d 13 (1st Cir.1988); *Hollins v. Powell,* 773 F.2d 191 (8th Cir.1985), *cert. denied,* 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986); and *In re Continental Illinois Sec. Litig.,* 732 F.2d 1302, 1314–15 & n. 20 (7th Cir.1984), is misplaced. Nor does Hornsby give us any reason to believe that the documents were prepared in the context of Gunn's providing services *other* than legal work; therefore, Hornsby's citation to *United States v. Horvath,* 731 F.2d 557 (8th Cir.1984), is also inapposite. Hornsby has received all (if not more than) the discovery he was entitled to from Gunn's files.

We affirm the judgment of the district court.

---

ARNOLD, Chief Judge, dissenting.

Because I believe that the Seventh Amendment entitled Hornsby to a jury trial, I respectfully dissent.

The Seventh Amendment states that "[i]n suits at common law ... the right of trial by jury, shall be preserved...." In general, if any claim in a case is legal, the Seventh Amendment guarantees the right to a trial by jury. See *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The Court holds that both of Hornsby's claims—reinstatement and back pay—were equitable, and that the District Court therefore properly denied his request for a jury trial. I agree that reinstatement is an equitable remedy, but I do not agree that back pay, at least in this case, is also an equitable remedy. And if back pay is a legal remedy, as I believe it is, this Court is denying Hornsby his constitutional right to a jury trial.

Suppose Hornsby had brought an action claiming that he had been fired in breach of his employment contract and asking only for back pay, that is, for the pay that he would have received absent the breach up until the time of judgment. Or suppose he had claimed a wrongful discharge under state tort law and, again, asked only for his back pay. In this event, I take it, everyone would agree that a jury trial is required. A money judgment is traditionally legal relief, and this holds true both in common-law tort or contract actions, and, apparently, in actions under any federal statute with the exception of Title VII of the Civil Rights Act of 1964. See, *e.g., Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (jury trial available on request of any party in actions for back pay under the Age Discrimination in Employment Act).

In the present case the claim for back pay is joined with an equitable claim for reinstatement. Why should this make a difference? It is commonly said that the back-pay request is "incidental" to the equitable claim for reinstatement, and is therefore itself equitable. Thus, the theory appears to be that a clearly legal claim for money becomes equitable, and the constitutional right to a jury is lost, simply because the plaintiff also seeks a form of equitable relief. This appears to be nothing more than an application of the traditional clean-up doctrine, under which a court of equity, once it obtains jurisdiction,

can give complete relief, including relief that, if sought alone, would be considered legal. This doctrine, basically a rule of judicial economy, grew up in the days, now long gone in the federal courts, of separate courts of equity and law. In that context, it made sense. Otherwise, someone seeking both legal and equitable relief would have to bring two cases in two different courts. The Supreme Court has clearly held, however, that the clean-up doctrine is not to be transplanted into modern, merged federal practice in such a way as to infringe on the Seventh Amendment. Thus, when legal and equitable claims are joined, the legal claim, including all issues of fact common to both claims, must be submitted to a jury. *Beacon Theatres, Inc., supra; Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The opposite view, that the jury nature of a claim, so to speak, disappears when it is joined with an equitable claim, was vigorously advocated by the dissent in *Beacon Theatres,* 359 U.S. at 517–18, 79 S.Ct. at 960 (Stewart, J., dissenting), and just as vigorously rejected by the Supreme Court.

Why should not this analysis, which appears well settled, be followed here? Our own cases seem inconsistent on the proper characterization of back pay. It is said that a Title VII claim for back pay is equitable, while a 42 U.S.C. § 1981 or § 1983 claim for back pay is legal. See *Setser v. Novack Inv. Co.,* 657 F.2d 962 (1981) (en banc); *Sisco v. Alberici Constr. Co.,* 655 F.2d 146, 151 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982). Title VII, however, appears to be the only exception to the general rule that back pay is legal relief. Although I cannot see how to justify this anomaly, the difference in treatment may have resulted from the particular language Congress chose in allowing back pay in Title VII cases. See 42 U.S.C. § 2000e–5(g). Back pay is included in what the statute calls equitable remedies and is to be awarded "as the court deems appropriate." *Id.* It is this complete discretion given to the courts in determining the availability and amount of back pay that the courts have emphasized in holding that back pay under Title VII is equitable rather than legal relief.

How should we resolve this split of authority in doubtful cases? On the one hand, we risk giving the plaintiff a jury trial when the Seventh Amendment might not actually require one. On the other hand, we risk denying the plaintiff a jury trial when the Seventh Amendment does require one. As between these two choices, it is better to err in favor of giving the plaintiff a jury trial when the Seventh Amendment might not require it. There is no constitutional right to a nonjury trial. Consequently, if an equitable claim is tried to a jury, the error may well be harmless; and even if it is not, the case may simply be remanded to the judge who presided over the jury trial to enter findings of fact. If, however, a legal claim is not tried to a jury upon proper request, the mistake is of constitutional import, and the case must be remanded for an entirely new trial. Therefore, if not because of the constitutional importance of a potential mistake, at least for the sake of judicial economy, we should resolve close cases in favor of a jury.

The Court suggests two reasons for denying Hornsby a jury trial. First, it says that the underlying statute, 45 U.S.C. § 60, is a criminal statute. I fail to see how this fact cuts against a trial by jury. If anything, it should cut in favor of a jury trial. Clearly—although under the Sixth rather than the Seventh Amendment—a criminal prosecution of the Railway Company under Section 60 would entitle the Railway to a jury trial. Why, then, is a plaintiff who sues civilly for monetary damages for violation of Section 60 not entitled to a jury trial? Although the Supreme Court has not directly spoken on this particular Seventh Amendment issue with regard to a criminal statute, *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), is analogous. In *Tull* the Court held that the Seventh Amendment guarantees a jury trial on the issue of liability in an action seeking civil penalties and injunctive relief under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* Although Section 60 is a criminal-penalty statute, a civil suit by

Hornsby for reinstatement and back pay is factually quite close to *Tull.*

Second, the Court suggests that while Section 60 creates a private cause of action for "equitable relief, including backpay," *ante* at 1132, it does not create a private cause of action for compensatory damages. This is offered as another reason to deny a litigant suing for relief under Section 60 a jury trial. I respectfully disagree. First, I have already expressed my view that back pay in the present context is legal, not equitable, relief, and hence, for that reason alone, the Seventh Amendment guarantees a litigant the right to a jury trial. Moreover, I disagree that Section 60 would not have allowed a private cause of action for compensatory damages and, consequently, a jury trial, if Hornsby had included such a claim in his complaint. The Supreme Court has recently held as much. In *Franklin v. Gwinnett County Public Schools,* — U.S. —, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992) (citing *Davis v. Passman,* 442 U.S. 228, 246–47, 99 S.Ct. 2264, 2277–78, 60 L.Ed.2d 846 (1979)), the Court held that once it has been determined that a private right of action exists, we are to "presume the availability of all appropriate remedies [specifically including damages] unless Congress has expressly indicated otherwise." In the case before us, by entertaining the issues it does, the Court admits that a private right of action to enforce Section 60 exists. Thus, according to *Franklin,* we have the power to award any and all appropriate relief including, if Hornsby had so requested, compensatory damages. If he had done so, surely the Court would not have denied him the right to a jury trial.

I respectfully dissent.