Keith L. NELSON, Plaintiff,

v.

SOO LINE RAILROAD COMPANY, a corporation, d/b/a CP Rail System, Joan Kuechle, and Daniel Janiga, M.D., Defendants.

No. CIV 98–2262 DSD/JMM.

United States District Court,
D. Minnesota.

May 5, 1999.

Cortney S. LeNeave, Richard L. Carlson and Hunegs, Stone, Koenig, LeNeave & Kvas, P.A., Minneapolis, MN, for plaintiff.

Jeffrey A. Eyres and Leonard, and Jeffrey R. Schmidt, Max C. Ramsey and Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on (1) defendants' motion for partial summary judgment and (2) defendants' motion to transfer venue. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court grants defendants' motions.

## BACKGROUND

This case arises out of an accident that occurred while plaintiff Keith L. Nelson was working as a conductor for defendant Soo Line Railroad Company ("Soo Line"). On January 29, 1997, Nelson fell off a Soo Line railroad car near Manfred, North Dakota, injuring his shoulder and arm. Under Soo Line's work rules, an injured employee must submit medical information he possesses regarding injuries received while on the job. Soo Line alleges that Nelson failed to provide all medical information. Nelson alleges that he made a full disclosure. On July 22, 1998, Soo Line initiated a formal investigation pursuant to the collective bargaining agreement ("CBA") negotiated between Soo Line and the United Transportation Union. Plaintiff appeared at the investigation proceeding, accompanied by a union representative. Based on the evidence submitted at the hearing, the hearing officer concluded that Nelson had failed to comply with Soo Line's work rules and imposed a ten day suspension.

On September 25, 1998, Nelson filed a three-count complaint in Hennepin County Court. Counts I and II relate to the circumstances surrounding plaintiff's injury. Soo Line is the only defendant to these counts. Count III relates to Soo Line's conduct after Nelson was injured. In addition to Soo Line, Joan Kuechle, Soo Line's disability claims manager, and Daniel Janiga, M.D., Soo Line's medical director, are named as defendants to Count III. On October 16, 1998, defendants removed the case to federal court. They now bring a motion for partial summary judgment as to Count III and a motion to transfer venue.

## DISCUSSION

### A. Motion for Partial Summary Judgment

Defendants move for partial summary judgment on Count III, which alleges that they "conspired to commit ... [an] extreme and outrageous pattern and campaign of harassment, threats and intimidation ... such that no reasonable man could be expected to endure such without suffering severe emotional distress, anxiety, and emotional upset." Count III also alleges that defendants' conduct constitutes "a violation of the Federal Employees Liability Act, Plaintiff's Civil Rights, ... the Americans with Disabilities Act, and other Federal and State laws." In his motion papers and at oral argument, however, Nelson has narrowed the focus of Count III to two legal theories: (1) intentional infliction of emotional distress and (2) retaliation in violation of the Federal Employers' Liability Act ("FELA"). The court will discuss each theory in turn.

### 1. Intentional Infliction of Emotional Distress

■ Nelson first argues that Count III is viable as a claim for intentional infliction of emotional distress. The defendants contend, however, that any claim for intentional infliction of emotional distress based on the allegations in his complaint is preempted by the Railway Labor Act ("RLA"). Enacted with the goal of "promot[ing] stability in labor-management relations by providing a comprehensive framework for resolving labor disputes," *Hawaiian Airlines, Inc. v. Norris,* 512

U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), the RLA mandates arbitration procedures for the "prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions." 45 U.S.C. § 151a. Under the RLA, disputes between railroads and their employees are classified as either "major" or "minor." *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Major disputes concern the creation of contractual rights, while minor disputes involve the enforcement of those rights. *See Elgin J. & E. Ry. v. Burley*, 325 U.S. 711, 723–24, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). Federal courts lack subject matter jurisdiction over employee claims determined to be minor disputes. *See Norris*, 512 U.S. at 253, 114 S.Ct. 2239 ("[Minor disputes] must be resolved only through the RLA mechanism, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions."). Under the RLA, a claim will be deemed to be a minor dispute if its adjudication necessarily "involv[es] the interpretation or application of an existing labor agreement." *Norris*, 512 U.S. at 246, 114 S.Ct. 2239.

■ Applying these principles to the present case, the court concludes that Nelson's claim for intentional infliction of emotional distress is a minor dispute over which the court lacks jurisdiction. Nelson's complaint revolves around (1) Soo Line's requirement that Nelson provide updated medical information, (2) Soo Line's investigation of Nelson's conduct, and (3) the hearing officer's decision to suspend Nelson based on his alleged failure to comply with the medical update requirement. Each of these events took place pursuant to terms of the CBA. Thus, any consideration of Nelson's claim would require the court to interpret the content and scope of the CBA provisions at issue and apply that interpretation to the facts underlying the claim. As the Seventh Circuit stated in a similar case, *Bielicke v. Terminal R.R. Ass'n:*

> One cannot determine whether [the railroad] conducted the investigations for legitimate purposes under the collective bargaining agreements or if they abused the investigation procedures allowed by the collective bargaining agreements (e.g., by conducting impermissible investigations under the guise of policy) without focusing the case on the collective bargaining agreements themselves. As such the proper vehicle for pursuing the claim is the Railway Labor Act (RLA).

30 F.3d 877, 878 (7th Cir.1994); *see also Fry v. Airline Pilots Ass'n Int'l*, 88 F.3d 831, 836–37 (10th Cir.1996) (employee's emotional distress claims preempted by the RLA because alleged behavior by employer "inextricably bound up" with labor agreement); *Calvert v. Trans World Airlines, Inc.*, 959 F.2d 698, 700 (8th Cir.1992) (employee's retaliation claim preempted when employer's actions are "at least arguably justified" by a provision in CBA). The conclusion in *Bielicke* and the other circuit court decisions applies with equal force to this case. Because adjudication of Nelson's claim for intentional infliction of emotional distress would be intertwined with questions regarding the interpretation and application of the CBA, the claim is preempted.

### 2. Retaliation

■ In the alternative, Nelson argues that Count III is viable as a claim for retaliation pursuant to the FELA, 45 U.S.C. §§ 55 and 60.[1] As the Eighth Circuit has stated, however,

---

1. Section 55 provides, in relevant part: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void . . . ."

Section 60 provides, in relevant part: "Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void . . . ."

Congress has not enacted a statute prohibiting an employer from discharging an employee in retaliation for filing a FELA action. Given the availability to plaintiffs of recourse to the arbitration procedures established under the RLA, there is little reason for a federal court to imply a right of action where Congress has not acted to create one.

*Landfried v. Terminal R.R. Assoc. of St. Louis*, 721 F.2d 254, 256 (8th Cir.1983). Consistent with this observation, the Eighth Circuit has refused to recognize legal claims for retaliation under either 45 U.S.C. § 55, *see id.* ("[Section 55] does not provide a cause of action for an employee discharged in retaliation for filing a FELA action"), or 45 U.S.C. § 60, *see Hornsby v. St. Louis Southwestern Ry. Co.*, 963 F.2d 1130, 1133 (8th Cir.1992) ("[Section 60] does not create a private cause of action for compensatory damages."). To be sure, *Hornsby* stated that courts have "very narrow" equitable jurisdiction to "protect FELA witnesses from retaliation by their employers." *Id.* at 1132. However, Nelson does not invoke the court's equitable jurisdiction in Count III. Rather, he complains of "severe and permanent physical, emotional and mental injuries," pain and suffering, medical expenses, loss of earning, and loss of enjoyment. Nelson Comp. at ¶ XIV. The retaliation provisions of FELA simply do not support a legal claim of this kind.[2] Accordingly, the court will grant defendants' motion for partial summary judgment as to Count III and dismiss defendants Kuechle and Janiga from the case.

---

2. Moreover, the circuit courts have repeatedly held that § 60 protects only co-workers who provide information on behalf of a FELA claimant, not the FELA claimant himself. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 258 (2d Cir.1995); *Mayon v. Southern Pac. Transp. Co.*, 805 F.2d 1250, 1253 (5th Cir. 1986); *see also Hornsby*, 963 F.2d at 1133 (stating that "FELA witnesses," rather than FELA claimants, receive protection under § 60).

In fact, the only case that supports Nelson's position is *Adler v. I & M Rail Link, L.L.C.*, in which the District Court for the Northern

## B. Motion to Transfer

Defendants have also brought a motion to transfer this case to North Dakota pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of transfer under 1404(a) is to "prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge F.B.L.*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). To prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred. *See Nelson v. Master Lease Corp.*, 759 F.Supp. 1397, 1401 (D.Minn.1991). While there is a general presumption in favor of a plaintiff's choice of forum, courts afford that choice significantly less deference when (1) plaintiff does not reside in the selected forum, *see Stewart v. Capitol Area Permanente Medical Group, P.C.*, 720 F.Supp. 3, 5 (D.D.C.1989), or (2) the transaction or underlying facts did not occur in the chosen forum, *see Hoppe v. G.D. Searle & Co.*, 683 F.Supp. 1271, 1276 (D.Minn.1988); *Dunn v. Soo Line R.R. Co.*, 864 F.Supp. 64, 65 (N.D.Ill.1994).[3]

---

District of Iowa found that "there is a FELA claim for retaliation by the injured employee himself or herself pursuant to 45 U.S.C. § 60." 13 F.Supp.2d 912, 931–32 (N.D.Iowa 1998). However, the *Adler* court reached this conclusion via a broad reading of *Hornsby*, one which ignores the Eighth Circuit's admonition in that decision that § 60 "does not create a private cause of action for compensatory damages." 963 F.2d at 1133. Thus, the court respectfully declines to follow the example of *Adler*.

3. Both circumstances are present in this case.

In evaluating a motion to transfer, the court considers the convenience of the parties, the convenience of the witnesses, and the interest of justice. *See Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd.,* 776 F.Supp. 1271, 1276 (N.D.Ill.1991) (citations omitted). In addition, the court may consider other factors as the facts of the case suggest. *See Terra Int'l, Inc. v. Mississippi Chemical Corp.,* 119 F.3d 688, 691 (8th Cir.1997).

■ With regard to the factor of party convenience, section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient. Transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer. *See Van Dusen,* 376 U.S. at 646, 84 S.Ct. 805 (1964). Here, however, it is clear that venue in the District of North Dakota would be significantly more convenient for both parties. The critical witnesses who will testify to Counts I and II are Nelson, Nelson's supervisors, three co-workers who were present at the scene of the accident, and a Soo Line employee who inspected the train car after the accident. Each resides in North Dakota. In addition, all eight of the medical personnel who examined Nelson are based in North Dakota. Because most of these witnesses are Soo Line employees working in North Dakota, the company will be spared substantial cost, both in terms of travel expense and lost work time, if the proceedings take place in North Dakota. Likewise, because Nelson is a North Dakota resident, his travel expenses will be significantly reduced if the proceedings are venued in North Dakota. In fact, the only conceivable inconvenience to Nelson is that his attorneys are located in Minneapolis. However, it is axiomatic that convenience to plaintiff's counsel "is not a factor to be considered in deciding the propriety of transfer." *Hoppe,* 683 F.Supp. at 1276; *see also Trimble v. Nat'l R.R. Passenger*

*Corp.,* 1997 WL 381775 *2 (E.D.Pa., June 27, 1997) ("The location and convenience of counsel are not pertinent factors in deciding a § 1404(a) motion to transfer.").

For similar reasons, the convenience of the witnesses strongly supports transfer. Relevant considerations include the number of essential non-party witnesses, their location, and the preference of courts for live testimony as opposed to depositions. *See Coast–To–Coast Stores, Inc. v. Womack–Bowers, Inc.,* 594 F.Supp. 731, 734 (D.Minn.1984). Here, as stated, the vast majority of anticipated fact witnesses are located in North Dakota.[4] Not only would venue in North Dakota be more personally convenient for most of the witnesses, the subpoena power of the district court in North Dakota would ensure their live testimony at trial.

■ As a final step in the transfer analysis, the court evaluates whether the interest of justice favors transfer. When weighing this factor, the court will typically look to matters like judicial economy, obstacles to a fair trial, conflict of law problems, and the advantages of having a local court determine local law. *See Terra Int'l,* 119 F.3d at 691. To the extent these considerations differ from those concerning convenience to the parties and witnesses, none cuts strongly one way or the other here. However, in cases closely analogous to this one, where party and witness convenience weight strongly in favor of transfer, courts have repeatedly found that transfer under § 1404(a) comports with the interest of justice. For example, in *Charron v. Great Northern Railway Company,* 309 F.Supp. 1386 (D.Minn.1970), plaintiff, a North Dakota resident, filed a FELA action in the District of Minnesota after suffering injuries while working for defendant in North Dakota. Plaintiff was treated in North Dakota, but retained counsel in Minneapolis, Minnesota. Of fifteen witnesses, thirteen

---

**4.** This is even more the case now that Count III of Nelson's complaint has been dismissed. The testimony of the few witnesses identified by the parties who live outside of North Dakota would appear to be most relevant to the allegations in Count III.

were North Dakota residents. On these facts, the court granted defendant's motion to transfer, finding that "the balance is strongly in favor of the defendant." *Id.* 1387–88. *See also Bundy v. Soo Line R.R.,* Civ. No. 4–96–179 (D.Minn. Nov. 15, 1996) (Tunheim, J.); *Uddyback v. New Jersey Transit Rail Operations,* 629 F.Supp. 1173, 1174 (S.D.N.Y.1986); *Celbusky v. Delaware & Hudson Ry. Co.,* 590 F.Supp. 934, 936 (E.D.Pa.1984); *Brindle v. Chesapeake & O. Ry. Co.,* 357 F.Supp. 1116, 1118 (N.D.Ill.1973). The court finds no reason to reach a different conclusion here.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for partial summary judgment as to Count III (Doc. No. 10) is granted.

2. Count III of plaintiff's complaint is dismissed with prejudice.

3. The clerk of court shall enter final judgment on behalf of defendants Joan Kuechle and Daniel Janiga. Kuechle and Janiga are dismissed from the case.

4. Defendants' motion to transfer venue (Doc. No. 11) is granted.

5. Venue shall be transferred to the United States District Court for the District of North Dakota, Southeastern Division.