In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2307

JUSTIN REED,

*Plaintiff-Appellee*,

*v.*

NORFOLK SOUTHERN RAILWAY COMPANY,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12-CV-873 — **Sharon Johnson Coleman**, *Judge*.

ARGUED DECEMBER 2, 2013 — DECIDED JANUARY 14, 2014

Before BAUER and FLAUM, *Circuit Judges*, and VAN
BOKKELEN, *District Judge*.[*]

FLAUM, *Circuit Judge*. This case is about the meaning of
the election-of-remedies provision in the Federal Railroad
Safety Act ("FRSA"). The defendant, Norfolk Southern
Railway, claims that this provision bars a railroad employee
who has been wrongfully discharged from obtaining relief

[*] Of the Northern District of Indiana, sitting by designation.

through both grievance-arbitration pursuant to the Railway Labor Act and an administrative claim or lawsuit under FRSA. We disagree. Although our reasoning differs from the district court's, we too conclude that nothing in FRSA bars an employee from bringing both claims.

## I. Background

In April 2009, Justin Reed, a trackman with Norfolk Southern Railway ("NSR"), experienced a bout of severe abdominal pain while working. He claimed that, after he informed his supervisor, company officials were reluctant to provide medical treatment and pressured him into signing a statement that he had not been "injured on or at work." Reed was on medical leave for about seven months. Soon after he returned to work, a company claims agent urged him to state whether he thought the April incident was work-related. Reed admitted that, notwithstanding his earlier attestation, he felt that his work did play a role in his injury. NSR responded by firing Reed for making inconsistent statements and for violating Rule N, an internal rule requiring same-day reporting of on-site injuries.

Reed was a member of the Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters, which had negotiated a collective bargaining agreement with NSR. Reed and the union believed that his termination violated the terms of this agreement. Following his termination—and pursuant to section 3 of the Railway Labor Act, 45 U.S.C. § 153—Reed appealed his dismissal to an arbitral board, Public Law Board 6394.

While the arbitration proceedings before the Board were pending, Reed also filed a complaint with the Occupational

Safety and Health Administration, alleging that NSR had violated the Federal Railroad Safety Act. FRSA prohibits railroad carriers from, among other things, discriminating against employees who "notify, or attempt to notify, the railroad carrier … of a work-related personal injury." 49 U.S.C. § 20109(a)(4). After waiting an appropriate period of time, *see id.* § 20109(d)(3), Reed brought an original action in federal district court.

Approximately seven months after Reed filed his FRSA suit, Public Law Board 6394 issued its opinion. The Board concluded that Reed's violations of company policy were not grounds for dismissal and awarded him reinstatement without back pay. Four days later, NSR moved for summary judgment in Reed's FRSA suit. By choosing to arbitrate his grievance before the Public Law Board, the company maintained, Reed had triggered FRSA's election-of-remedies provision:

> **Election of Remedies.—** An employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier.

29 U.S.C. § 20109(f). Thus, NSR argued, Reed had closed the courthouse door to his FRSA claim.

The district court denied NSR's motion. *Reed v. Norfolk Southern Ry. Co.*, 2013 WL 1791694 (N.D. Ill. Apr. 26, 2013). It reasoned that the arbitration proceedings were not an "election" of remedies because arbitration was mandatory, and that a collective bargaining agreement was not "another provision of law" because it arose out of a private agreement

rather than a federal or state statute. NSR successfully moved for interlocutory review.

## II. Discussion

We said above that Reed arbitrated his grievance pursuant to the Railway Labor Act because, in the rail industry, such arbitration is required by statute. *See Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 323 (1972) ("[T]he compulsory character of the administrative remedy provided by the Railway Labor Act … stems not from any contractual undertaking between the parties but from the Act itself."); *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001). Specifically, 45 U.S.C. § 153 First (i) requires that disputes growing out of collective bargaining agreements initially be handled through the rail carrier's internal processes, but if those processes fail either party has the right to appeal to the National Railroad Adjustment Board. Another provision, 45 U.S.C. § 153 Second, permits unions and rail carriers to jointly establish special adjustment boards in lieu of the National Railroad Adjustment Board; one such adjustment board was Public Law Board 6394, the body that heard Reed's appeal.

NSR sees the Railway Labor Act as the "provision of law" it needs to get its foot in the door of § 20109(f). In support, NSR relies on a Supreme Court decision, *Norfolk & Western Railway Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117 (1991), that addressed a similar phrase in the Interstate Commerce Act. The question in *Dispatchers* was whether a provision that exempted certain consolidating rail carriers "from the antitrust laws and from *all other law*, including State and municipal law, as necessary to let [it] carry out the transaction" operated to relieve the carriers

from obligations incurred in a collective bargaining agreement. *Id.* at 120 (emphasis added) (quoting 49 U.S.C. § 11341(a) (1988)). The Court held that it did. In particular, the Court identified the Railway Labor Act—"the law which gives legal and binding effect to collective agreements" in the rail industry—as "the law that … is superseded when an ICC-approved transaction requires abrogation of collective-bargaining agreements." *Id.* at 132 (internal citations and quotation marks omitted).

Just because the Supreme Court treated the Railway Labor Act as "law" for Interstate Commerce Act purposes, however, does not mean that we must treat the Act as "law" for FRSA purposes.[1] *Dispatchers* shows that such a reading is permissible, but it does not require that outcome if statutory text and context point the other way. Simply put, *Dispatchers* does not lay down a mandatory rule about the scope of the term "law" in federal statutes. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 n.6 (1995) (distinguishing "all law" in the Airline Deregulation Act of 1978 from "any other law" in *Dispatchers* and noting that each phrase had to be interpreted in light of the "statute and case before us"). FRSA, in other words, must be read on its own terms.

Here, the district court—like other district courts that have addressed this question, and also like the Department of Labor's Administrative Review Board—concluded that

---

[1] NSR does not contend that the collective bargaining agreement itself is a provision of law. We agree. *See, e.g.*, *Dispatchers*, 499 U.S. at 130 ("A contract has no legal force apart from the law that acknowledges its binding character."); 17A Am. Jur. 2d Contracts § 1 (2013) ("A contract is not a law, nor does it make law: it is the agreement plus the law that makes the ordinary contract an enforceable obligation.").

the Railway Labor Act was not a "provision of law" within
the meaning of § 20109(f). *Accord Ray v. Union Pac. R.R. Co.*,
2013 WL 5297172, at *6–8 (S.D. Iowa Sept. 13, 2013); *Ratledge
v. Norfolk Southern Ry. Co.*, 2013 WL 3872793, at *10–17 (E.D.
Tenn. July 25, 2013); *Mercier v. Union Pac. R.R.*, 2011 WL
4889278 (ARB Sept. 29, 2011); *cf. Battenfield v. BNSF Ry. Co.*,
2013 WL 1309439, at *4 (N.D. Okla. Mar. 26, 2013) (finding
that conclusion "at least colorable"); *Norfolk Southern Ry. v.
Solis*, 915 F. Supp. 2d 32, 43–45 (D.D.C. Jan. 3, 2013) (same).

All of these authorities analyzed NSR's argument
primarily in terms of the scope of "provision of law," and as
just described, nothing in *Dispatchers* forecloses this result.
That said, we determine the meaning of the election-of-
remedies provision de novo, and we are reluctant to focus
only on that particular snippet of text. In our view, there is a
conceptually simpler way to address the question. For even
assuming *arguendo* that the Railway Labor Act is "law", it
must also be the case that Reed "*sought protection under*" that
law. Giving those words their plain meaning, we cannot see
how he did.[2]

---

[2] The difference between our approach and the district court's may be
more terminological than anything. Often, arguments designed to show
that the Railway Labor Act is not "law" can just as easily be used to
show that it is not the *kind* of law under which one can "seek protection."
*See, e.g., Ratledge*, 2013 WL 3872793, at *14 ("[T]he rights a plaintiff seeks
to enforce [in the Railway Labor Act process]" are "contractual rights …
[a]nd it is *those rights*, not the RLA, *under which the plaintiff sought
protection*." (emphasis added)); *Reed*, 2013 WL 1791694, at *4 ("Reed's
right to be terminated only for just cause … arises not out of any
provision of the RLA, but instead out of the collective bargaining
agreement.").

In the first place, the Railway Labor Act "does not undertake governmental regulation of wages, hours, or working conditions. Instead it seeks to provide a means by which agreement may be reached with respect to them." *Terminal R.R. Ass'n v. Bhd. of R.R. Trainmen*, 318 U.S. 1, 6 (1943). In other words, the Act is entirely agnostic as to the content of any collective bargaining agreement. (Reed's appeal to Public Law Board 6394 is a case in point; as the district court noted, the claim he asserted arose solely from his collective bargaining agreement.) Likewise, the Act's streamlined arbitration procedures are intended only to "see that disagreement about [working] conditions does not reach the point of … threaten[ing] continuity of work, not to remove conditions that threaten the health or safety of workers." *Id.*; *see also Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994); *Elgin, Joliet & Eastern Ry. Co. v. Burley*, 325 U.S. 711, 725–28 (1945).

We doubt that a person who arbitrates a grievance based on a private contractual agreement necessarily does so "under" federal law merely because a federal statute requires that the claim be brought before an adjustment board. *Cf. Graf v. Elgin, Joliet & Eastern Ry. Co.*, 697 F.2d 771, 776 (7th Cir. 1983) ("[T]he fact that an activity is regulated by a federal statute, as collective bargaining in the railroad industry is regulated by the Railway Labor Act," does not mean that "disputes between private parties engaged in that activity arise under the statute" for jurisdictional purposes). But even if we grant that Reed was proceeding under the Railway Labor Act, it seems quite odd to say that he was *seeking protection* under it. Again, the Railway Labor Act offers Reed no protection at all; it merely instructs him to bring any grievances that cannot be resolved on-property to

a specific forum. By appealing to this forum, Reed did not seek protection under the Railway Labor Act any more than a litigant seeks protection under the jurisdictional statute for the Court of Appeals for the Federal Circuit, 28 U.S.C. § 1295, when he files an appeal from a final decision of the United States Court of Federal Claims.

Perhaps, to use the Secretary of Labor's example,[3] an employee could be seen as seeking protection under the Railway Labor Act if he brought a claim based on one of the Act's few substantive obligations: for instance, if a railroad carrier refused to participate in mandatory arbitration in the first place. But where, as here, the railroad employee's claim is based only on rights set forth in his collective bargaining agreement, we conclude that he is seeking protection under that agreement and not under the Railway Labor Act. As the Supreme Court has put it, "[i]n submitting his grievance to arbitration, an employee seeks to vindicate his contractual right *under a collective bargaining agreement*." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49 (1974) (emphasis added).

NSR analogizes the Railway Labor Act to 42 U.S.C. § 1983, which likewise is not a source of substantive rights, but this analogy is inapt. Section 1983 provides a plaintiff with a cause of action for the deprivation of federal constitutional or statutory rights. *See, e.g.*, *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). The Railway Labor Act directs a claimant to appeal to a particular arbitral forum. Even if we were to say, colloquially, that plaintiffs "seek

---

[3] The Secretary of Labor filed an *amicus* brief at our invitation, reiterating and expanding upon the view the Department expressed in *Mercier*, 2011 WL 4889278.

protection" under § 1983 (and not the applicable substantive federal right they aim to vindicate), we do not see how the same is true of the Railway Labor Act.

NSR also contends that nothing in FRSA requires that the "provision of law" itself create the substantive rights invoked by the employee. This argument shears those words of their context. FRSA states that an employee may not "seek protection under both this section and another provision of law." 49 U.S.C. § 20109(f). It is obvious what it means to seek protection under FRSA: to bring a claim founded on one of the statute's substantive protections. *See id.* § 20109(d)(1) ("An employee who alleges … discrimination in violation of subsection (a), (b) or (c) of this section, may seek relief in accordance with the provisions of this section … ."). To seek protection under another provision of law must mean something similar: to bring a claim founded on a comparable substantive protection. For example, we agree that if Reed brought a claim under the Occupational Safety and Health Act, which extends whistleblower protection to employees that file a workplace safety complaint or take other protected action, the election-of-remedies provision would bar a successive FRSA claim. *See* 29 U.S.C. § 660(c). But nothing in 45 U.S.C. § 153 offers substantive protection akin to 49 U.S.C. § 20109; the Railway Labor Act offers no protection for Reed to seek.[4]

---

[4] The meager legislative history behind § 20109(f) supports precisely this interpretation. NSR points us to a floor speech by Congressman James Florio, the manager of the bill in the House of Representatives:

> We also agreed to a provision clarifying the relationship between the remedy provided here and a possible separate remedy under OSHA. Certain railroad employees, such as employees working

In sum, although the Railway Labor Act is indeed a federal statute—and thus, we may assume, another provision of law—it is strained to say that Reed sought protection under it by appealing his grievance to the special adjustment board. Rather, Reed sought protection under his collective bargaining agreement. The plain meaning of the statute therefore tells us that Reed is not precluded from obtaining relief under FRSA simply because he appealed his grievance to Public Law Board 6394.

Although we may stop here, we note that our conclusion is buttressed by FRSA's history. When it was first enacted, the election-of-remedies provision read as follows:

> Whenever an employee of a railroad is afforded protection under this section and under any other provision of law in connection with the same allegedly unlawful act of an employer, if such employee seeks protection he must elect either to seek relief pursuant to this section or pursuant to such other provision of law.

---

in shops, could qualify for both the new remedy provided in this legislation, or an existing remedy under OSHA. It is our intention that pursuit of one remedy should bar the other, so as to avoid resort to two separate remedies, which would only result in unneeded litigation and inconsistent results.

126 Cong. Rec. 26532 (Sept. 22, 1980). NSR argues that this excerpt reflects a broad purpose to prevent all "unneeded litigation and inconsistent results." We believe that overreads Congressman Florio's statement, which is firmly rooted to the "existing remedy" under the Occupational Safety and Health Act.

Pub. L. No. 96-423, § 10, 94 Stat. 1811, 1815–16.[5] The original phrasing emphasizes that one can only seek protection under a provision of law that itself *affords protection* for retaliatory acts. FRSA obviously affords such protection. *See* 49 U.S.C. § 20109(a)–(c). But as we have said, in this case the Railway Labor Act afforded Reed no substantive protections at all. It merely afforded a statutory framework for collective bargaining and any disputes that arise therefrom.

In addition, in 2007, Congress added a provision to FRSA affirmatively disclaiming any intention to diminish railway employees' rights. *See* 49 U.S.C. § 20109(h) ("Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement.") NSR argues that its interpretation does not "diminish" any employee rights or remedies because an employee always remains free to bring a FRSA claim or a grievance, just not both. We suppose this may not literally be a diminution of either remedy, although it is a fine distinction—one that sits uneasily with the saving clause's broad language. By contrast, § 20109(h) fits snugly with our reading of § 20109(f). The election-of-remedies provision only bars railroad employees from seeking duplicative relief under overlapping antiretaliation or whistleblower statutes; it does

---

[5] Congress restyled the provision in 1994 and again, very slightly, in 2007; all parties agree the 1994 changes were nonsubstantive and that the meaning of the provision has remained constant. *See* S. Rep. No. 103-265, 103d Cong., 2d Sess., at 5 (1994) ("As in other codification bills enacting titles of the United States Code into positive law, this bill makes no substantive change in the law.").

not diminish their rights or remedies under collective bargaining agreements in any way.

To be clear, these additional sources confirm our interpretation but do not control it. We find that the plain meaning of 49 U.S.C. § 20109(f) is enough.

### III. Conclusion

We choose to hang our textual analysis on a different peg than the district court and the Secretary of Labor, but our conclusion is the same: FRSA's election-of-remedies provision is concerned with provisions of law that grant workers substantive protections, not with federal or state law writ large. The Railway Labor Act is not such a provision, and so we AFFIRM the district court's order denying summary judgment.