# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

—————

No. 13-60382

—————

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2014

Lyle W. Cayce
Clerk

DANNY L. GRIMES,

Plaintiff–Appellant,

versus

BNSF RAILWAY COMPANY, a Delaware Corporation,

Defendant–Appellee.

—————

Appeal from the United States District Court
for the Northern District of Mississippi

—————

ON PETITION FOR REHEARING

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the petition for rehearing is DENIED. The opinion, 2014 U.S. App. LEXIS 2861 (Feb. 17, 2014), is WITHDRAWN, and the following opinion is SUBSTITUTED to provide clarification as properly suggested in the petition.

* * * * * * * * * * * * * *

No. 13-60382

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Danny Grimes appeals a judgment giving collateral-estoppel effect, in his Federal Railway Safety Act ("FRSA") suit, to a finding of fact made by a Public Law Board ("PLB") in the course of Grimes's pursuit of his rights under a collective bargaining agreement ("CBA") with BNSF Railway Company ("BNSF").  Concluding that the application of collateral estoppel was error, we vacate and remand.  We also decide that the election-of-remedies provision in the FRSA does not bar Grimes's suit.


## I.

Grimes, a BNSF employee, was injured in an accident while working with two co-employees on a nonmoving train.  The accident occurred because one of the other employees operated one of the cars even though he was not certified to do so.  Grimes initially reported that he could not recall what had happened, and only after an investigator questioned him the next day did he acknowledge that the other employee was operating the train.  After the investigation and a hearing by BNSF, the company terminated all three employees after concluding that they had covered up for each other, thereby violating a company rule that "[e]mployees must not withhold information, or fail to give all the facts to those authorized to receive information regarding unusual events, accidents, personal injuries, or rule violations."

During BNSF's investigation and hearing, Grimes was represented by a union representative and had opportunities to cross-examine and call witnesses and introduce evidence.  Pursuant to the CBA and the Railway Labor

2

No. 13-60382

Act ("RLA"), which renders the CBA and its arbitration proceedings enforceable, the case was appealed to a PLB that decided the case after reviewing the records of the investigation and hearing. The PLB found that Grimes had been dishonest but thought the punishment too harsh given his otherwise spotless record; it therefore ordered him reinstated but without compensation for the lost time.

Grimes sued alleging a violation of 49 U.S.C. § 20109(a), a part of the FRSA that provides that a "railroad carrier engaged in interstate or foreign commerce . . . may not discharge . . . an employee due, in whole or in part, to the employee's lawful, good faith act done . . . to notify the railroad carrier . . . of a work-related personal injury . . . ." BNSF counters that it fired Grimes for dishonesty, a direct violation of company rules. Although the parties disagree as to which burden-shifting framework applies, both agree that to make out a *prima facie* case of unlawful discharge Grimes has to prove that he engaged in a "protected activity," which requires that he have reported the incident honestly and in good faith.

The district court gave preclusive effect to the arbitral finding of fact—made by the PLB—that Grimes had been dishonest. Because that fact issue determined the rest of the statutory claim, the court granted summary judgment to BNSF. On appeal, Grimes contends that findings in arbitration proceedings cannot be used collaterally to estop decisions in federal-court proceedings based on independent federal claims and, alternatively, that collateral estoppel was inappropriate because the arbitral procedures were inadequate. Agreeing that they were inadequate, we remand for the district court to make its own determination as to whether there is a genuine issue of material fact for trial. We also hold, consistently with a new decision of the Seventh Circuit, that the FRSA's election-of-remedies provision does not bar this suit.

3

No. 13-60382

## II.

Grimes urges that a trilogy of cases—*McDonald v. City of West Branch, Mich.*, 466 U.S. 284 (1984), *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981), and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) —precludes the application of collateral estoppel here. We agree with BNSF, however, that those cases counsel against only *claim preclusion*, not issue preclusion.

In *Gardner-Denver*, the district court had decided that a Title VII discrimination *claim* was precluded because an identical nondiscrimination claim under the CBA had been submitted to final arbitration. The Supreme Court, 415 U.S. at 60, held that "the federal court should consider the employee's claim de novo" but added, "The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." The Court explained that a trial court has discretion as to how much weight to afford the arbitral decision and that "[r]elevant factors" include the similarity of claims, the "degree of procedural fairness in the arbitral forum," the "adequacy of the record," and the "special competence of particular arbitrators." *Id.* at 60 n.21. Moreover, a court may afford great weight to the arbitral decision "especially . . . where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record." *Id.*

In *Barrentine*, the plaintiff had submitted a contract-based wage claim to arbitration pursuant to a CBA, and the arbitrator rejected the claim without opinion. The district court refused to address the Fair Labor Standards Act ("FLSA") claim subsequently filed because it was based on the same underlying facts. The Supreme Court, 450 U.S. at 745, reversed, but its holding was only that the *claim* was not precluded. The Court again distinguished between factual and legal claims: "Although an arbitrator may be competent to resolve

4

many preliminary factual questions, such as whether the employee 'punched in' when he said he did, he may lack the competence to decide the ultimate legal issue whether an employee's right to a minimum wage or to overtime pay under the statute has been violated." *Id.* at 743. The Court cited its admonition in *Gardner-Denver*: "We do not hold that an arbitral decision has no evidentiary bearing on a subsequent FLSA action in court." *Id.* at 743 n.22.[1]

Finally, in *McDonald*, the Supreme Court determined that arbitration under a CBA could not preclude a 42 U.S.C. § 1983 suit in federal court even if the underlying facts were the same. Although the Court held that neither "res judicata" nor "collateral estoppel" could apply, 466 U.S. at 292, it relied on *Gardner-Denver* and *Barrentine* and again noted that the arbitral proceedings can have evidentiary weight, *id.* at 292 n.13. In short, there is no reason to believe that *McDonald* was intended to be a departure from the prior two decisions.[2]

It follows that these Supreme Court decisions do not prohibit a court from applying collateral estoppel. BNSF, for its part, also posits the other extreme—that collateral estoppel *must* apply because the RLA, and specifically 45 U.S.C. § 153, First (m) and (q), makes the findings of the arbitral panel "conclusive on the parties" and its award "final and binding." We disagree: The RLA makes the arbitral findings conclusive on the parties *in the dispute governed by the RLA.* Grimes does not disagree that the arbitral findings of fact are conclusive on his CBA claim that he pursued with the PLB. Those

---

[1] It may be that today the Supreme Court would not say that an arbitrator is not as competent as a judge to decide ultimate legal issues. It is sufficient for our purposes, however, to note that the Court at least recognized an arbitrator's competence to find facts.

[2] Additionally, insofar as all of these cases were based on a distrust of the arbitration process, the Court has disavowed and limited them. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260–72 (2009).

No. 13-60382

findings are not, however, necessarily conclusive in a suit brought under a different statute.

III.

The answer lies somewhere in the middle. As a general matter, arbitral proceedings *can* have preclusive effect even in litigation involving federal statutory and constitutional rights, and the decision to apply it is within the discretion of the district court. As acknowledged in *Universal American Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991), the Court held in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985), that collateral estoppel may apply in federal-court litigation to facts found in arbitral proceedings as long as the court considers the "federal interests warranting protection." In *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1358−62 (11th Cir. 1985), the court discussed *Byrd* and concluded that the determination of fact issues in the arbitration of state-law claims should have preclusive effect in a subsequent federal RICO suit where those fact issues determined the existence of predicate acts for purposes of RICO.

A district court has "broad discretion" to decide whether to apply the doctrine, "at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written opinion." *Universal Am. Barge*, 946 F.2d at 1137. Additionally, "[a] district court in exercising its discretion must carefully consider whether procedural differences between arbitration and the district court proceeding might prejudice the party challenging the use of offensive collateral estoppel." *Id.* If the procedural differences "might be likely to cause a different result," then collateral estoppel is inappropriate. *Id.* at 1138. The arbitrators also ought to be "experienced and disinterested individuals." *Cf. id.* at 1137.

6

No. 13-60382

The decision in *Universal American Barge* was based largely on *Greenblatt. See Universal Am. Barge*, 946 F.2d at 1137. *Greenblatt* provides us with similar guidance and establishes at least two prongs of the inquiry:  Collateral estoppel is not improper regarding underlying acts "particularly if such findings are within the panel's authority and expertise" and where the arbitration procedures "adequately protected the rights of the parties." *Greenblatt*, 763 F.2d at 1361. As to the second prong, "[w]hen an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings . . . ." *Id.* at 1360. In the arbitration in *Greenblatt* specifically, both parties had been represented by counsel, made opening and closing arguments, and were permitted to examine and cross-examine witnesses and to present relevant evidence. *Id.* at 1361. Therefore, and because the arbitrators were also experts in the matter, the court gave preclusive effect to the arbitral findings of fact.

Here, on the other hand, the investigation and hearings were conducted by the railroad. The actual arbitrators—the PLB—only reviewed the record from that investigation. Collateral estoppel was inappropriate because the procedures of the PLB did not afford Grimes the basic procedural protections of a judicial forum. The fact that a subsequent panel of neutral arbitrators reviewed the record of the internal investigation and hearing and concluded that the railroad had reached the correct result is not enough to insulate the underlying, employer-conducted proceedings from scrutiny.

Two Federal Employers' Liability Act ("FELA") cases are particularly helpful. Those courts held in essentially identical circumstances that where the arbitral panel relies on a hearing conducted by the defendant, the arbitral findings of fact do not have preclusive effect. In *Graves v. Burlington Northern*

7

No. 13-60382

*& Santa Fe Railway Co.*, 77 F. Supp. 2d 1215 (E.D. Okla. 1999), a terminated employee sued under the FELA after the PLB had upheld the railroad's finding that the employee had filed a false injury report. *Id.* at 1217. As here, the PLB had relied on the investigation conducted by the railroad. Also as here, the employee was represented at the investigation by a union representative and had the opportunity to cross-examine and call witnesses and to present other evidence. *Id.*

The court held, in an opinion that could be applied almost word-for-word here, the following:

> First, it should be noted, the hearing was conducted by Mr. Mike Black, a terminal manager for Burlington Northern, the defendant, instead of a judge. Second, the plaintiff was represented by [a union official]. The notice of investigation seems to indicate plaintiff was only entitled to be represented by a Union official, not an attorney, at this proceeding. Third, the decision to terminate plaintiff and that the plaintiff's report of injury was falsified was made by Mr. Black and not an impartial fact finder such as a judge or jury. Fourth, it did not appear the rules of evidence were utilized at the hearing. Finally, the [PLB's] affirmance of the board's findings was based only upon materials exchanged between the parties and from the transcript of the investigation.

> While the plaintiff was allowed to call and cross-examine witnesses and submit evidence for consideration, this court finds the nature of the proceedings as well as the procedures used in the fact finding process were insufficient to protect the plaintiff's statutory and constitutional rights. The plaintiff did not have the benefit of an attorney to represent him. Further, the hearing was conducted and the decision was made by an employee of the defendant. Finally, the entity that reviewed this decision was limited to the materials exchanged between the parties and the evidence submitted at the hearing. Defendant had the burden of proving res judicata, estoppel or collateral estoppel barred this FELA action. Defendant has failed to meet this burden. This court finds plain-

8

tiff's claim for personal injuries due to the negligence of the defendant are not barred by the previous disciplinary hearing conducted pursuant to the [RLA] and the [CBA].

*Id.* at 1218–19 (internal citations omitted). Here, similarly, (1) the hearing was conducted by the railroad; (2) the plaintiff was represented by the union rather than an attorney; (3) the termination decision was made by a railroad employee, not by "an impartial fact finder such as a judge or jury"; (4) the rules of evidence do not appear to have been controlling; (5) and most crucially, the PLB's affirmance was based solely on the record.

The court in *Kulavic v. Chicago & Illinois Midland Railway Co.*, 1 F.3d 507 (7th Cir. 1993), came to the same conclusion in another FELA case. *Kulavic* relies heavily on the *Gardner-Denver* trilogy that the Supreme Court has since limited, but the decision is about collateral estoppel rather than claim preclusion and is thus on point. In *Kulavic*, the PLB had found that the railroad was justified in terminating Kulavic for malingering, where he did not have proper medical documentation of his illness and injury. The railroad wanted some of the PLB's factual determinations to have preclusive effect in the FELA negligence case before the district court. *Id.* at 509–11.

The court of appeals reversed, rejecting the application of collateral estoppel. It noted that the investigation was an "on-premises" investigation conducted by the railroad; that the termination was decided by the railroad; that a union member, rather than an attorney, had represented Kulavic; that no discovery was available before the hearing; and "most importantly" that the railroad "was both judge and jury." *Id.* at 515–16. Additionally, the court noted that the PLB was limited to reviewing only the evidence from the investigatory hearing. *Id.* at 516–17 & n.4. For all of these reasons, the railroad had not carried its burden of demonstrating that the procedures "were sufficiently

9

protective" of the plaintiff's "federal statutory right to recover under the FELA." *Id.* at 517.

The only case cited by BNSF that might support application of collateral estoppel is *Gonzalez v. Southern Pacific Transportation Co.*, 773 F.2d 637 (5th Cir. 1985), in which this court gave controlling deference to an arbitrator's factual finding that Gonzalez had filed a false report. The court relied on the repeated statement in the *Gardner-Denver* trilogy that a court could give factual findings evidentiary weight. *Id.* at 644. Ultimately, however, *Gonzalez* does not control because in that case the court accorded deference in part for the reason that "[n]either party contend[ed] that the arbitration was procedurally unfair . . . ." *Id.* at 645. Here, to the contrary, that is a central issue of dispute. Indeed, *Gonzalez* gives us no indication of what arbitral procedures were used.

We agree with the reasoning in *Graves* and *Kulavich*. We add that although it seems likely that Grimes was able to adduce all the evidence he could wish to present, to call all the witnesses that he wished to call, and to cross-examine all the opposing witnesses, our decision rests primarily on the lack of neutral arbitrators. That is, because it was the railroad that conducted the investigation and hearing and terminated Grimes, and because the PLB only reviewed a closed record, the procedures were not adequate for collateral estoppel to apply.

There are good reasons to require such neutral arbitrators: The employer may have already developed opinions about the employee before the ultimate hearing and may have other motives (irrespective of whether they existed here) to dismiss a particular employee. Thus, the employer's decision-maker might assess the credibility and weight of the various evidence differently than would a neutral arbitrator.

No. 13-60382

Although *Graves* and *Kulavich* depended on other factors as well—including the lack of legal counsel and the absence of evidence rules—our caselaw does not necessarily require the presence of legal counsel or the use of the rules of evidence.  Nor does it require that Grimes have had an opportunity to depose witnesses before cross-examining them at the official hearing.  The decision in *Greenblatt*, 763 F.2d at 1360, requires only that "an arbitration proceeding afford[] basic elements of adjudicatory procedure."  We express no opinion on whether the procedures used by BNSF, if they had been used by the PLB itself, would have been sufficient for collateral estoppel to apply.  Remand is appropriate so that the district court can decide for itself whether there is a genuine issue of material fact for trial, granting only as much deference to the arbitral finding of fact as is consistent with these principles.

IV.

BNSF claims that this suit is precluded by the FRSA's election-of-remedies provision, 49 U.S.C. § 20109(f), which states that a railroad employee "may not seek protection under both this section [of the FRSA] and another provision of law for the same allegedly unlawful act of the railroad carrier."  We agree with *Reed v. Norfolk Southern Railway Co.*, 740 F.3d 420 (7th Cir. 2014), and conclude that the election-of-remedies provision does not bar the present suit.

BNSF argues that Grimes initially sought protection under the RLA arbitration provisions by following the RLA-mandated grievance procedure and arbitration established in the CBA.  Grimes contends that he sought protection under the CBA for his *contractual* claims, and even though this contract is *enforceable* by the RLA, the RLA is not itself the source of law under which he seeks protection.  The Seventh Circuit held in its FRSA case,

11

> [A]lthough the Railway Labor Act is indeed a federal statute—and thus, we may assume, another provision of law—it is strained to say that [plaintiff] sought protection under it by appealing his grievance to the special adjustment board. Rather, [he] sought protection under his collective bargaining agreement. The plain meaning of the statute therefore tells us that [he] is not precluded from obtaining relief under FRSA simply because he appealed his grievance to Public Law Board 6394.

*Id.* at 425.

We agree and pause only to illustrate the point: Under BNSF's reading we can imagine a contract that does not give any protection for the activity undertaken here, in which case the election-of-remedies provision would not bar the suit. According to BNSF, Grimes's FRSA suit is barred because Grimes's contract does give protection for the activity. But if the election-of-remedies bar rises and falls with the provisions of the CBA, that conclusion necessarily acknowledges that Grimes's claim pursued in front of the PLB also rises and falls with those same provisions. Thus, Grimes is seeking protection under the agreement and not under the RLA, which "is entirely agnostic as to the content of any collective bargaining agreement." *Id.* at 423.

For the foregoing reasons, we VACATE and REMAND for the district court to make its own determination as to whether there is a genuine issue of material fact for trial. We impose no limitations on the nature or content of the decisions the court may make on remand.